BECKETT-BUFFUM AGENCY, INC v ALLIED PROPERTY
& CASUALTY INSURANCE COMPANY

Docket No. 321273. Submitted June 3, 2015, at Grand Rapids. Decided
June 9, 2015, at 9:00 a.m.

Beckett-Buffum Agency, Inc filed suit in Kent Circuit Court
against Allied Property & Casualty Insurance Company for
breaching its statutory and contractual duties to plaintiff.
Plaintiff had contracted with defendant to serve as an agency for
defendant in the insurance industry. Under MCL 500.1209(2)(e),
defendant terminated the agency agreement with plaintiff be-
cause plaintiff failed to submit 25 applications for automobile
and home insurance within the immediately preceding 12
months. In response to plaintiff's suit, defendant moved for
summary disposition under MCR 2.116(C)(10) on the basis that
there was no genuine issue of material fact involved. Plaintiff
claimed it submitted 29 applications for insurance in the imme-
diately preceding 12 months. However, 6 of the 29 "applications"
were for the renewal or reinstatement of previously existing
insurance policies. The court, Christopher P. Yates, J., concluded
that a request to reinstate a lapsed insurance policy did not
constitute an application for insurance, and therefore, the court
granted defendant's motion for summary disposition. Plaintiff
appealed.

The Court of Appeals *held*:

The trial court properly concluded that plaintiff failed to
submit 25 applications for home insurance and automobile insur-
ance within the immediately preceding 12-month period and that,
because of plaintiff's failure to produce, defendant was permitted
by law to terminate the agency agreement with plaintiff. Al-
though plaintiff claimed it submitted 29 applications for insur-
ance during the applicable time period, 6 of those applications
were to reinstate or renew previously existing policies. The trial
court correctly ruled that reinstatements and renewals of preex-
isting policies did not qualify as applications for insurance under
MCL 500.1209(2)(e).

Affirmed.

INSURANCE — HOME AND AUTOMOBILE POLICIES — AGENCY AGREEMENTS — WORDS
    AND PHRASES — APPLICATION.

> For purposes of MCL 500.1209(2)(e), an application for home
> insurance or automobile insurance does not include the reinstate-
> ment or renewal of a previously existing policy.

*Barrix Law Firm, PC* (by *Timothy D. VandenBerg*),
and *Robert E. Attmore* for plaintiff.

*Harvey Kruse, PC* (by *Gary Stec* and *Lanae Monera*),
for defendant.

Before: HOEKSTRA, P.J., and O'CONNELL and MURRAY,
JJ.

PER CURIAM. Plaintiff, Beckett-Buffum Agency, Inc.,
appeals as of right the trial court's order granting
defendant Allied Property & Casualty Insurance Com-
pany's motion for summary disposition under MCR
2.116(C)(10). Because plaintiff submitted fewer than
25 applications for insurance during the relevant time
period, defendant could cancel plaintiff's Agency
Agreement under MCL 500.1209(2)(e), and therefore,
we affirm.

On January 7, 2010, plaintiff entered into an Inde-
pendent Agency Agreement with defendant under
which plaintiff was to serve as an agency for defendant
in the insurance industry. On December 6, 2011, de-
fendant sent plaintiff a letter terminating the Agency
Agreement based on plaintiff's lack of production. In
particular, under MCL 500.1209(2)(e) of the Insurance
Code, MCL 500.100 *et seq.*, an insurer may terminate
an insurance producer's authority to represent the
insurer with respect to automobile insurance or home
insurance, when the insurance producer submits "less
than 25 applications for home insurance and automo-
bile insurance within the immediately preceding 12-
month period."

In response to its termination, plaintiff filed this action, alleging that defendant breached its contractual and statutory duties to plaintiff when it terminated the Agency Agreement because plaintiff had submitted to defendant 29 applications for insurance policies in the applicable 12-month period. After the close of discovery, defendant moved for summary disposition under MCR 2.116(C)(10). Defendant argued, in relevant part, that 6 of the 29 policies were policy renewals, not applications, meaning that plaintiff had not reached the statutory threshold of 25 applications, and termination was therefore appropriate. The trial court granted defendant's motion on this basis, and plaintiff now appeals as of right.

On appeal, plaintiff argues that the trial court erred by granting summary disposition to defendant because plaintiff submitted more than 25 applications to defendant within the relevant 12-month time period. Specifically, consistently with its arguments in the trial court, plaintiff maintains that the disputed 6 renewals of lapsed policies should be counted as "applications for home insurance and automobile insurance" within the meaning of MCL 500.1209(2)(e). If these 6 renewals constitute applications, the parties agree that plaintiff submitted more than 25 applications in the relevant 12-month period.

We review de novo a trial court's grant of summary disposition. *Comerica Bank v Cohen*, 291 Mich App 40, 45; 805 NW2d 544 (2010). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint" and is properly granted as a matter of law when there is no "genuine issue regarding any material fact." *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004) (quotation marks and citation omitted). When reviewing a motion for summary disposi-

tion under MCR 2.116(C)(10), we consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. *Id.* "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

In this case, whether the six policy renewals credited to plaintiff constitute applications involves a question of statutory interpretation. We review de novo issues of statutory interpretation. *Hoffman v Boonsiri*, 290 Mich App 34, 39; 801 NW2d 385 (2010). "The primary goal of statutory interpretation is to give effect to the Legislature's intent," and it is well-recognized that "[t]he words of a statute provide the most reliable evidence of its intent[.]" *Klooster v City of Charlevoix*, 488 Mich 289, 296; 795 NW2d 578 (2011) (quotation marks and citations omitted). Consequently, we focus on the statute's plain language. *Id.* "Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used." *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011). A dictionary may be consulted to determine a word's common and ordinary meaning. *Id.* "When the language is clear and unambiguous, we will apply the statute as written and judicial construction is not permitted." *Driver v Naini*, 490 Mich 239, 247; 802 NW2d 311 (2011).

The relevant statutory language at issue in this case provides:

> (2) As a condition of maintaining its authority to transact insurance in this state, an insurer transacting

automobile insurance or home insurance in this state shall not cancel an insurance producer's contract or otherwise terminate an insurance producer's authority to represent the insurer with respect to automobile insurance or home insurance, except for 1 or more of the following reasons:

*  *  *

(e) Submission of less than 25 *applications for home insurance and automobile insurance* within the immediately preceding 12-month period. [MCL 500.1209(2)(e) (emphasis added).]

At its most basic in this context, an "application" is a "request" or "petition." *Merriam-Webster's Collegiate Dictionary* (2014). "Submission" in this context indicates "an act of submitting something (as for consideration or inspection)[.]" *Id.* "Submitting" means "present[ing] or propos[ing] to another for review, consideration, or decision[.]" *Id.* And finally, the term "insurance" generally denotes "coverage by contract whereby one party undertakes to indemnify or guarantee another against loss by a specified contingency or peril[.]" *Id.* Thus, MCL 500.1209(2)(e) plainly envisions that to continue its Agency Agreement, an insurance producer would present for the insurer's consideration requests for insurance contracts providing home and automobile coverage.[1]

Contrary to plaintiff's argument, the statute does not contemplate renewal of existing policies or the reinstatement of lapsed policies as "applications." That is, when an insurance contract is renewed, a request for coverage has been previously made and granted,

---

[1] As used in MCL 500.1209(2)(e), "home insurance" and "automobile insurance" mean specifically the home and automobile insurance contemplated by MCL 500.2103(3) and MCL 500.2102(2) respectively. See MCL 500.1209(5).

and the renewal is "merely a continuation or extension of the original contract." See 2 Couch, Insurance, 3d, § 29:35, p 68. Indeed, an initial request for insurance typically involves a written application to the insurer, while such a document is not necessarily required for a mere renewal of a policy.[2] See, e.g., MCL 500.3037(1) and (6). Likewise, there is a distinction between a request for an insurance policy and the reinstatement of a lapsed policy. When a lapsed policy is subsequently reinstated, the reinstatement "is not a new contract of insurance, nor is it the issuance of a policy of insurance; but rather it is a contract by virtue of which the policy already issued, under the conditions prescribed therein, is revived or restored after its lapse." *New York Life Ins Co v Buchberg*, 249 Mich 317, 321; 228 NW 770 (1930). Therefore, renewal of an existing policy or reinstatement of a lapsed policy is not in actuality a request for an insurance policy because such a policy already exists. We are, in short, persuaded that the reference to "applications for home insurance and automobile insurance" does not encompass subsequent efforts to extend or revive previously existing coverage. See *Black's Law Dictionary* (6th ed) (defining "application" in the context of insurance as "[t]he *preliminary* request, declaration, or statement made by a party applying for an insurance policy)" (emphasis added).

Consistently with this conclusion, defendant produced, as support for its motion for summary disposition, an affidavit from Jessica Zaugg, an underwriting director for defendant. Zaugg averred that defendant does not consider either the renewal of policies or the reissuance of lapsed or cancelled policies to be applica-

---

[2] We note, however, that in some cases, an application or request for insurance may be made orally. See MCL 500.2122(1).

tions for insurance. According to Zaugg, defendant does not perform the same underwriting practices for the renewal of policies or the reissuance of policies as it does for new applications, and generally, an insured does not have to submit a signed application before a policy is renewed or reissued. Moreover, for each of the six renewed policies at issue, Zaugg indicated that the policyholders originally applied for and received coverage before the time period at issue. Zaugg further explained that each of the renewed policies had the same policy numbers as the insureds' original policies and that "a signed application was not submitted by or on behalf of" the insureds before the policies were reissued. Plaintiff likewise concedes that the 6 policies at issue were merely renewals or reinstatements of previously existing coverage. Consequently, viewing the record in the light most favorable to plaintiff, it is clear that plaintiff did not submit 25 applications during the 12 months immediately preceding defendant's termination of plaintiff's Agency Agreement, and thus, termination was proper under MCL 500.1209(2)(e).

Because defendant was statutorily permitted to terminate the Agency Agreement if plaintiff submitted "less than 25 applications for home insurance and automobile insurance within the immediately preceding 12-month period," MCL 500.1209(2)(e), plaintiff's claim that defendant breached its statutory duties to plaintiff when it terminated the Agency Agreement fails. Further, the Agency Agreement permitted defendant to terminate the contract at any time by 90 days' written notice, and there is no dispute that defendant complied with this procedure. Therefore, plaintiff's claim that defendant breached its contractual duties to plaintiff when it terminated the Agency Agreement

also fails. As such, the trial court properly granted defendant's motion for summary disposition under MCR 2.116(C)(10).

Affirmed.

HOEKSTRA, P.J., and O'CONNELL and MURRAY, JJ., concurred.